Individual Liability," filed herewith; and in the Affidavit of Martha ("Molly") Otis Scheer; and the Affidavit of Glenn M. Stoddard, filed on February 3, 2011. The undisputed facts show that Ms. Otis is entitled to summary judgment.

### III.   IMMUNITY AND CLEARLY ESTABLISED LAW.

The individual defendants assert in their Answer at ¶¶ 43 & 44, and in a March 24, 2011 letter to Court (Document #25), as follows:

> As for claims against City officials in their individual capacity, as stated in Attorney Stoddard's letter, it is clear that those officials are entitled to absolute legislative immunity with respect to all acts or conduct which is legislative in nature. *See Rateree v. Rockett*, 852 F.2d 946, 949-950 (7th Cir. 1988). To the extent absolute immunity does not apply then it is defendants' position qualified immunity likely applies and that defense has been asserted in the pleadings.

(Misfeldt Letter to Judge Crocker, 3/24/11, Doc. #25.)

However, as shown below, Defendant Duffy is not entitled to either absolute legislative immunity or qualified immunity, and he must be held individually and personally liable to Ms. Otis for his discretionary actions as Mayor of the City of Hayward in administering and interpreting Ordinance #476 against her on September 17, 2007. In addition, Defendants Swintowski, Gillis, Johnson, Kreyer, Parker, Voight, and Worman are also not entitled to absolute legislative immunity or qualified immunity, and they must be held individually and personally liable to Ms. Otis for their discretionary actions against her, in violation of clearly established law, when they spoke out and voted to deny Ms. Otis's request for an outdoor music permit on July 19, 2010.

#### A.   *Legislative Immunity.*

Local officials performing legislative functions enjoy absolute immunity under Section 1983 for their legislative acts. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). The U.S. Supreme Court has held that "whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question." *Almonte v. City of Long Beach*, 478 F.3d 100, 106; *see also Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S.Ct. 966). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan*, 523 U.S. at 54, 118 S.Ct. 966 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)). Thus, legislative immunity shields legislators and other government officials in the executive and judicial branches from suit when they are acting "in a legislative capacity." *Bogan*, 523 U.S. at 55, 118 S.Ct. 966 (holding that a mayor was entitled to legislative immunity for acts taken that were "integral steps in the legislative process"); *Supreme Court of Va. v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 734, 100 S.Ct. 1967, 64

L.Ed.2d 641 (1980) (holding that Virginia Supreme Court justices were entitled to legislative immunity for acts taken in their legislative capacities).

Although it extended legislative immunity to local officials, *Bogan v. Scott-Harris* left open the question of whether introducing and voting for an ordinance was always a legislative act. The Supreme Court held that the budget ordinance at issue there "bore all the hallmarks of traditional legislation," "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services it provides to its constituents," and "may have prospective implications that reach well beyond the particular occupant of the office." *Id.*

However, legislative immunity has been denied to local legislators who voted to:

(1) lay off selected employees because of their political affiliation, *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 7-9 (1st Cir. 2000);

(2) not renew an individual employment contract, *Canary v. Osborn*, 211 F.3rd 324, 329-30 (6th Cir.), *cert. denied*, 531 U.S. 927 (2000);

(3) terminate a particular employee, *Baird v. Board of Education for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 696 (7th Cir. 2004), *cert. denied*, 126 S. Ct. 332 (2005); and

(4) deny a conditional land-use permit, because of the *ad hoc* character of the process and the individual focus of the matter determined. *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219-24 (9th Cir. 2003).

Although the officials in the above cases may have had some legislative responsibility, their decisions to determine the rights of specific individuals were not legislative acts; rather, they were executive or administrative acts beyond the scope of legislative immunity.

### B.      Qualified Immunity.

Other than the U.S. President, every other executive official--from cabinet officials and governors, legislators, and judges performing administrative functions, to the tens of thousands of public employees exercising state and local authority such as law enforcement officers and schoolteachers--enjoys only qualified immunity from suit. *See Mitchell v. Forsyth*, 472 U.S. at 520-24 (rejecting absolute immunity for cabinet officers and individuals performing national security investigations); *Harlow v. Fitzgerald*, 457 U.S. 800, 808-13 (1982) (rejecting absolute immunity for high-ranking presidential aides); *Wood*, 420 U.S. at 322 (rejecting absolute immunity for school officials); and *Scheuer v. Rhodes*, 416 U.S. 232, 247-49 (1974) (rejecting absolute immunity for governors, state adjunct generals, national guard officers, and enlisted members and presidents of state universities.).

Qualified immunity is an affirmative defense that rests on two mutually dependent rationales: (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; and (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good. *See Scheuer v. Rhodes*, 416 U.S. 232, 240 (1974).

However, the qualified immunity defense shields public officials performing discretionary government functions only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). *See also Zvott v. Harris*, 550 U.S. 372, 382-83 (2007).

Because public officials commonly perform discretionary functions, qualified immunity turns on two issues: (1) whether the action in question violated a constitutional right and (2) whether that action violated clearly established law. Although the former question may involve disputed facts, the latter is a question of law subject to early resolution. This involves a historical inquiry into whether the law was clearly established when the defendant acted.

*Saucier v. Katz* held that lower courts must decide qualified immunity defenses using that two step analysis in that sequence. *Saucier v. Katz*, 533 U.S. 194 (2001). In *Pearson v. Callahan* the Court in 2009 relaxed the analysis, holding that the *Saucier* procedure was not mandatory and that courts should have the flexibility to decide the question in either order. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). The Court observed that it is sometimes easier to determine whether a constitutional right was clearly established than whether there is such a right. *Id.*

### C.    Clearly Established Law.

Whether qualified immunity applies to the discretionary actions of a public official depends on whether the law allegedly being violated is clearly established. If it is clearly established, then qualified immunity does not apply and the defendant may be held personally and individually liable.

In a series of cases, the U.S. Supreme Court set forth the approach to be taken. *Anderson v. Creighton* refined the meaning of "clearly established law" in a law enforcement officer's qualified immunity defense against a claim that he conducted a warrantless search without probable cause or exigent circumstances. *Anderson v. Creighton*, 483 U.S. 635 (1987). There, the plaintiff argued that no officer could reasonably believe that he could conduct an unreasonable search as the Fourth Amendment itself clearly established the prohibition against unreasonable searches. The Supreme Court, rejecting the argument, held that it stated the legal inquiry too generally; because probable cause determinations are fact dependent, the relevant question was "the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the

information the searching officers possessed." *Id.* at 641. Although identifying a case in which "the very action in question has previously been held unlawful" is not necessary, it is essential that "in the light of pre-existing law, the unlawfulness must be apparent." *Id.* at 640. This is commonly called the "fair warning" standard.

The "fair warning" standard has been applied in First Amendment cases such as *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005), where the court held that public officials had fair warning of the prohibition against retaliating against citizens for exercising their First Amendment rights. Likewise, in *Akins v. Fulton County*, 420 F.3d 1293 (11th Cir. 2005), the court cited two prior cases and held they provided fair warning against retaliation for a public employee's protected speech.

In *Musso v. Hourigan,* 836 F.2d 736 (2d Cir.1988), the court examined the application of *Harlow v. Fitzgerald*, 457 U.S. 800, (1982) to an alleged violation of First Amendment rights. The court began its discussion by noting the general proposition that the First Amendment prohibits content regulation of speech. *Id.* at 742 (*citing Mosley,* 408 U.S. at 95-96, 92 S.Ct. at 2289-90; *Heffron,* 452 U.S. at 647-48, 101 S.Ct. at 2563-64). Crucial to the application of *Harlow* under those circumstances were the questions of whether the defendant silenced the plaintiff because he disagreed with the content of the plaintiff's speech; and if so whether such conduct violated clearly established First Amendment law. The court concluded that the first consideration was a question for the trier of fact, and if it was found that the defendant did impose a content-based restriction, "such conduct unambigously violated clearly established first amendment law." *Id.* at 743.

Here, Ordinance #476 unambiguously violated clearly established First Amendment law because it imposed a content restriction by prohibiting outdoor music in the City of Hayward after 10:00 p.m. without a special permit--which could only be granted on an administrative and discretionary basis—by the Hayward City Council. The Court has already ruled in plaintiffs' favor on this issue and defendants have conceded liability under both the First and Fourteenth Amendments. Thus, there is no dispute that the law prohibiting such restrictions under the First and Fourteenth Amendments is clearly established.

Nonetheless, it is important to repeat that music is inherently expressive and it receives the full protection of the First Amendment. *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569 (1995) (remarking that music of famous composer Arnold Schoenberg is "unquestionably shielded" by the First Amendment).

> Music is one of the oldest forms of human expression. From Plato's discourse in the Republic to the totalitarian state in our own times, rulers have known its capacity to appeal to the intellect and to the emotions, and have censored musical compositions to serve the needs of the state…. The Constitution prohibits any like attempts in our own legal order. Music, as

12

a form of expression and communication, is protected speech under the
First Amendment.

*Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989).

Likewise, "[e]ntertainment, as well as political and ideological speech, is
protected; motion pictures, programs broadcast by radio and television, and live
entertainment, such as musical and dramatic works, fall within the First Amendment
guarantee." *Schad v. Mount Ephraim*, 452 U.S. 61, 65 (1981).

Although Ordinance #476 allowed constitutionally protected music to be
performed after 10:00 p.m. by permit holders who were granted approval by the Hayward
City Council, it denied this protected form of expression for everyone who did not hold—
or who were denied—permits, namely Ms. Otis.

As applied to her, Ms. Otis was singled out for differential and less favorable
treatment by defendants under Ordinance #476 than others who have applied for permits
to play music outside.

IV.   **DEFENDANT DUFFY IS INDIVIDUALLY AND PERSONALLY LIABLE
FOR HIS DISCRETIONARY ACTION AS MAYOR IN ADMINISTERING
AND INTERPRETING ORDINANCE #476 AGAINST MS. OTIS ON
SEPTEMBER 17, 2007.**

As discussed above at ¶18, the Hayward City Council did not hold a formal public
hearing on the proposed Ordinance #476 prior to its passage on September 17, 2007.
Nonetheless, Ms. Otis learned about the proposed ordinance and attended the meeting to
voice concerns that the proposed Music Ordinance would hinder her business at the
Pavilion, because on multiple occasions throughout the tourist season her establishment
boasted outdoor music. Ms. Otis stated that she had been in the music business for a long
time and every other city where she had played that regulated outdoor music would take
decibel readings where the group was playing and where the residential area started. She
went on to state that the proposed Music Ordinance was vague and subjective, and that it
would leave music wide open to be regulated by people who complain. Ms. Otis also
asked if she would need to get permission from the City Council each week or if she
could get a permit to hold outdoor music on a weekly schedule. In response to her
question, Defendant Duffy, who was then the Mayor of the City of Hayward, would not
offer a firm answer but stated that potentially Ms. Otis could approach the City Council
with a regular schedule when outdoor music would be played and, if no one turned out to
complain, then there would not be a problem. (Otis Aff., February 3, 2011, at ¶ 3 & 4;
see also Complaint at ¶ 20; Defendants' Answer and Affirmative Defenses at ¶ 20.)

In making this statement, Mr. Duffy acted in his administrative role as Mayor of
the City of Hayward. In so doing, he applied and interpreted Ordinance #476 to Ms. Otis
in an administrative and discretionary manner, rather than in a legislative capacity. He
did this by denying her the right to play outdoor music after 10:00 p.m., unless she first

13

approached the City Council with a regular schedule showing when music would played, and unless she was approved to play such music by the City Council. This conduct by Mr. Duffy was clearly not legislative in nature, and thus *Rateree v. Rockett*, 852 F.2d 946, 949-950 (7th Cir. 1988), does not apply. Furthermore, this conduct was not analogous to the conduct of the mayor in *Bogan*, 523 U.S. at 55, 118 S.Ct. 966, because Mr. Duffy's actions in interpreting and applying Ordinance #476 to Ms. Otis did not involve acts that were "integral steps in the legislative process," since Ordinance #476 had already been adopted and was being applied by Mr. Duffy to Ms. Otis.

Furthermore, Mr. Duffy stated that "there would not be a problem" as long as "no one turned out to complain." This action by Mr. Duffy chilled Ms. Otis's protected speech and denied her the right to play music outside after 10:00 p.m., in violation of clearly established First Amendment law.

Mr. Duffy had fair warning that his action was contrary to clearly established law because Ms. Otis even stated at the time that she had been in the music business for a long time and every other city where she had played that regulated outdoor music would take decibel readings where the group was playing and where the residential area started. She went on to state that the proposed Music Ordinance was vague and subjective, and that it would leave music wide open to be regulated by people who complain. (Otis Aff., February 3, 2011, at ¶ 3 & 4; *see also* Complaint at ¶ 20; Defendants' Answer and Affirmative Defenses at ¶ 20.) In essence, Ms. Otis, as a lay-person, pointed out to Mr. Duffy and the Hayward City Council that Ordinance #476 was contrary to the First Amendment.

Ironically, Mr. Duffy also had fair warning that Ordinance #476 was unconstitutional by the very fact that he is a licensed attorney and, therefore, he should have known Ordinance #476 was unconstitutional. Had he thought seriously about the issue or merely done some legal research he would have known that music has long been protected speech under the First Amendment. He could then have contacted Ms. Otis to let her know that Ordinance #476 could not be lawfully enforced against her. He did not do so. Mr. Duffy, of all the people involved at the time, should have known better and, therefore, had "fair warning."

Therefore, Mr. Duffy must be held individually and personally liable to Ms. Otis for his discretionary action as Mayor of the City of Hayward in administering and interpreting Ordinance #476 against her on September 17, 2007, in violation of her rights under the First and Fourteenth Amendments.

V.    **DEFENDANTS SWINTOWSKI, GILLIS, JOHNSON, KREYER, PARKER, VOIGHT, AND WORMAN ARE INDIVIDUALLY AND PERSONALLY LIABLE FOR THEIR DISCRETIONARY ACTIONS IN DENYING MS. OTIS AN OUTDOOR MUSIC PERMIT ON JULY 19, 2010.**

On July 19, 2010, Ms. Otis--this time with her attorney present--appeared before the Hayward City Council to request approval of a special permit from the City Council

that would allow her to play outdoor music at the Pavilion until 1:00 a.m., on Friday and Saturday nights throughout the year. (Admitted: Complaint at ¶ 29; Defendants' Answer and Affirmative Defenses at ¶ 29.)

The City Council has granted special permits for other applicants since Ordinance #476 was enacted, as set forth above in numbered paragraphs 28 through 40, of the "facts" section of this brief.

Before taking up Ms. Otis's request for approval of a special permit at the July 19, 2010 City Council meeting, the City Council took up another request for a special permit for outdoor music made by Pyykola and the Wild River Inn, to hold outdoor music until 1:00 a.m. on Sunday, September 5, 2010. This request was granted in part but Pyykola was allowed to hold outdoor music only until 12:00 a.m. instead of 1:00 a.m., as he had requested. *See* ¶ 40, above; and Stoddard Aff., February 3, 2011, at ¶ 16, Ex. 11.

At the same July 19, 2010 Hayward City Council meeting, Ms. Otis also requested a special permit under Ordinance #476, and her attorney even stated that if the City Council denied her special permit request it would be doing so in violation of Ms. Otis's First Amendment rights under the U.S. Constitution. Nonetheless, Mr. Swintowski spoke out in opposition to granting approval of Ms. Otis's special permit request and the City Council subsequently voted to deny the request. *See* ¶ 40, above.

Thus, Defendants Swintowski, Gillis, Johnson, Kreyer, Parker, Voight, and Worman were all clearly acting in an administrative and discretionary manner in administering Ordinance #476 against Ms. Otis, in violation of clearly established law under the First and Fourteenth Amendments, when they spoke out against and voted to deny Ms. Otis's request for an outdoor music permit on July 19, 2010.

These defendants were even expressly warned by Ms. Otis's attorney that "to deny the request would violate Ms. Otis's first amendment rights," and this is even noted in the City's minutes, as quoted above. Thus, these defendants certainly had "fair warning" that what they were doing was in violation of Ms. Otis's clearly established constitutional rights.

Therefore, Defendants Swintowski, Gillis, Johnson, Kreyer, Parker, Voight, and Worman must be held individually and personally liable to Ms. Otis for their discretionary actions against her, in violation of clearly established law, when they spoke out and voted to deny Ms. Otis's request for an outdoor music permit on July 19, 2010.

**WHEREFORE**, Ms. Otis respectfully requests that the Court grant summary judgment in her favor:

A.      That Defendant Duffy is individually and personally liable to Ms. Otis for his discretionary action as Mayor of the City of Hayward in administering and interpreting Ordinance #476 against her on September 17, 2007, in violation of her clearly established rights under the First and Fourteenth Amendments;

15

B.      That Defendants Swintowski, Gillis, Johnson, Kreyer, Parker, Voight, and Worman are individually and personally liable to Ms. Otis for their discretionary actions in administering Ordinance #476 against her on July 19, 2010, in violation of her clearly established rights under the First and Fourteenth Amendments, when they denied Ms. Otis's request for an outdoor music permit;

C.      That defendants be required to pay plaintiff compensatory, nominal, punitive, and other damages for their intentional deprivation of her constitutional rights, as may be proven at trial;

D.      That defendants shall pay plaintiff and her attorneys their reasonable attorneys' fees, costs, and expenses in this action, in accordance with 42 U.S.C. § 1988; and

E.      That the Court order such other and further relief as it deems appropriate under the circumstances.

Dated this 6th day of May, 2011.

Respectfully submitted,
**STODDARD LAW OFFICE**

By: /s/Glenn M. Stoddard
Glenn M. Stoddard
Attorney for Plaintiff Martha
("Molly") Otis Scheer
WI State Bar No. 1020964
316 N. Barstow Street, Suite B
P.O. Box 227
Eau Claire, WI 54702
Tel: (715) 852-0345
Cell: (715) 864-3057
Fax: (715) 852-0349
Email: glennstoddard@gmail.com

**Of Counsel:**
By: /s/Patricia A. Keahna
Patricia A. Keahna
MN Bar No. 0242962
316 N. Barstow Street, Suite B
P.O. Box 227
Eau Claire, WI 54702
Tel: (715) 852-0345
Cell: (715) 894-7711
Fax: (715) 852-0349;
Email: stoddard.keahna@gmail.com

16

## CERTIFICATE OF SERVICE

I. Glenn M. Stoddard, hereby certify that on May 6, 2011, the foregoing was electronically filed with the Clerk of Court using the ECF system which will send notification of this filing to all counsel of record.

/s /Glenn M. Stoddard
Glenn M. Stoddard, SBN 1020964
Attorney for Plaintiff Martha
("Molly") Otis Scheer