IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARTHA ("MOLLY") OTIS SCHEER,

Plaintiff,

v.

CITY OF HAYWARD, THOMAS J. DUFFY, DONALD SHEEHAN, BILL SWINTOWSKI, GARY GILLIS, HAROLD JOHNSON, JOE KREYER, CHARLES MUNICH, PAT PARKER, JASON SPEROS, AL VOIGHT and VERNA WORMAN,

Defendants.

OPINION AND ORDER

10-cv-447-slc

---

In this civil action brought pursuant to 42 U.S.C. §§ 1983 and 1988, plaintiff Martha Otis Scheer alleges that defendants violated her rights under the First and Fourteenth Amendments in adopting, applying and enforcing City of Hayward Music Ordinance #476. On February 3, 2011, Otis moved for summary judgment on all her claims. Dkt. 17. In response, defendants informed the court that they did not oppose the motion with respect to liability on the part of defendant City of Hayward and the individual defendants in their official capacities. Dkts. 23, 26. Left open were the affirmative defenses of absolute legislative immunity and qualified immunity with regard to the defendants in their individual capacities and the question of damages. *See* dkts. 23-26.

On May 18, 2011, the court granted Otis's request for leave to file a second motion for summary judgment (dkt. 29) on all of her individual capacity claims except the one against defendant Sheehan.[1] Dkt. 35. Specifically, Otis alleges that (1) defendant Thomas Duffy is individually liable for misleading comments he made at a council meeting about getting a permit

---

[1] Otis did not move for summary judgment on her individual capacity claim against Sheehan because she asserts that facts surrounding his enforcement of the ordinance remain in dispute.

under the ordinance before the ordinance became effective, and (2) defendants Bill Swintowski, Gary Gillis, Harold Johnson, Joe Kreyer, Pat Parker, Al Voight and Verna Worman are personally liable for denying her request for an outdoor music permit on July 19, 2010. That motion is now before the court.

For the reasons stated below, I am granting Otis's motion for summary judgment in part and denying it in part. Because Otis did not suffer any injury that can be redressed by this court as a result of the statements defendant Duffy made about the ordinance at the September 17, 2007 council meeting, her individual capacity claim against him must be dismissed for lack of standing. I conclude that defendants Swintowski, Gillis, Johnson, Kreyer, Parker, Voight and Worman are not entitled to either absolute or qualified immunity for their role in denying Otis a permit on July 19, 2010. Therefore, left for trial is Otis's remaining individual capacity claim against defendant Sheehan and the question of damages with respect to Otis's official capacity claims against all of the named defendants and her individual capacity claims against Swintowski, Gillis, Johnson, Kreyer, Parker, Voight and Worman.

## FACTS

### I. The Parties

Plaintiff Martha Otis Scheer is an adult resident of Wisconsin who owns several businesses, including "The Pavilion-Wine Bar," in the City of Hayward, Wisconsin. Otis is a professional musician. For several years, a substantial percentage of her business income has been derived from performing music by herself and with other musicians at The Pavilion.

Defendant City of Hayward, Wisconsin is a city government which was created pursuant to the laws of Wisconsin. Defendant Thomas J. Duffy is a Wisconsin licensed attorney and the former mayor of Hayward. Defendant Donald Sheehan is the former city police chief. Defendant Bill Swintowski is the incumbent mayor of Hayward. Defendants Gary Gillis, Harold Johnson, Joe Kreyer, Charles Munich, Pat Parker, Jason Speros and Al Voight are elected alderpersons and members of the Hayward City Council.

**II. Adoption of Ordinance**

On August 20, 2007, the Police Committee of the Hayward City Council met and adopted a motion to have the city attorney draft a music ordinance for consideration by the city council at its September 2007 meeting. The meeting minutes state that the proposed ordinance "would require any establishment hosting music (band or DJ) outside after 10:00 p.m. to obtain permission from the City Council prior to hosting the outdoor music." Defendants Duffy, Sheehan, Gillis, Munich, Speros, Voight and Worman attended the meeting. Gillis moved to approve development of the ordinance and Worman seconded. The motion was carried and approved without objection. Duffy and Sheehan supported the proposed ordinance.

At a meeting held on September 17, 2007, the City Council for the City of Hayward unanimously passed Ordinance No. 476, which prohibit any establishment or private party from playing music outside after 10:00 p.m. without first obtaining a special permit from the Hayward City Council. Specifically, it provides that failure to obtain permission from the Hayward City Council to play music outside shall result in forfeitures of $50.00 plus applicable court costs for the first offense, $100.00 plus costs for the second offense and $200.00 plus costs for the third offense.

The following council members were present and voted in favor of the ordinance: Gary Gillis, Harold Johnson, Charles Munich, Jason Speros, Al Voight, Vema Worman and Bill Swintkowski. Council member Pat Parker was not present. Duffy signed the ordinance. At all times between September 2007 and the present, city council members and Duffy relied on and followed the advice and recommendations of City Attorney Kelsey concerning the enactment, enforcement and issuance of permits under of the ordinance.

Although no formal public hearing was held prior to the passage of the ordinance on September 17, Otis learned about the proposed ordinance and attended the meeting to voice concerns that it would hinder her business at The Pavilion, which boasted outdoor music on multiple occasions throughout the tourist season. Otis and other musicians typically played live and recorded music in the courtyard of The Pavilion at least two nights per week until about 12:00 a.m. or later. Otis provided this service to her customers and wine bar patrons. It was very popular and profitable for Otis and her business. Otis stated at the meeting that she had been in the music business for a long time and every other city where she had played that regulated outdoor music would take decibel readings where the group was playing and in the residential areas. She went on to state that the proposed ordinance was vague and subjective and would leave music wide open to be regulated by people who complain.

Otis asked the council if she would need to get permission from the city council each week or if she could get a permit to hold outdoor music on a weekly schedule. In response to her question, Duffy would not offer a firm answer but stated that Otis potentially could approach the city council with a regular schedule for outdoor music and if no one turned out to complain, there would not be a problem.

(The parties dispute whether on the night the ordinance passed, Sheehan told Otis that the ordinance would not apply to her business at The Pavilion.)

**III. Enforcement**

On September 26, 2007, Ordinance #476 was published and became effective in the city under color of state law. Sometime after 10 p.m. on September 28, 2007, at least one police officer reported to The Pavilion regarding outdoor music being played there. (The parties dispute how many officers and police cars were sent, the exact time they showed up and whether they informed Otis that she was in violation of the ordinance and had to stop playing. Otis avers that 2 or 3 police cars pulled up a little after 10 p.m. and informed her that she was in violation of the ordinance and would have to stop playing music outside or be cited and subject to forfeitures because she did not have permit to play music outside after 10 p.m. Defense witnesses aver that a citizen contacted the police department at 10:45 p.m. to complain about loud music coming from The Pavilion and one officer reported but was informed that the band had finished for the night.)

Because of the ordinance and the incident on September 28, Otis has been forced to move all live and recorded music inside The Pavilion at substantial expense to her and her business. She has lost a substantial amount of business and a substantial number of patrons who formerly visited The Pavilion because of the stigma cast on her business from the police visit.

## IV. Permits

Beginning in April 2008, the Hayward City Council considered and either approved, denied or modified various requests under the ordinance to hold outdoor music. The council made the following decisions regarding requests for outdoor music:

- April 21, 2008—approved American Cancer Society request "to have (D.J.) music throughout the night at the Relay for Life event on August 8-9, 2008, at the Hayward High School Track."
- June 16, 2008—approved permit requests from the Hayward Veteran's Community Center and McCormick House.
- June 16, 2008—authorized City Police Committee to make a decision on whether or not to approve a request from Waynamo's Wildlife Bar & Museum.
- June 23, 2008—City Police Committee approved the Waynamo request for outdoor music until 12:00 a.m. on Friday, July 25, and Saturday, July 26, 2008 but not on Sunday, July 27, 2008.
- July 21, 2008—approved request from Old Hayward Eatery for outdoor music until midnight on Friday, July 25 and Saturday, July 26, 2008, and request from the Wild River Bar to hold outdoor music until midnight on Sunday, August 31, 2008.
- May 18, 2009—approved American Cancer Society request to hold outdoor music at the Hayward High School Track from 6:00 p.m., Friday, August 7th until 9:00 a.m., Saturday, August 8, 2009.
- June 15, 2009—approved Old Hayward Eatery request to hold outdoor music until 12:00 a.m. on July 24-25, 2009.
- August 17, 2009—approved Wild River Bar request to hold outdoor music until midnight on Sunday, September 6, 2009.
- April 19, 2010—approved American Cancer Society Relay for Life request to hold outdoor music from 6:00 p.m., Friday, August 13 until 9:00 a.m. on Saturday, August 14, 2010.

On July 19, 2010, Otis and her attorney appeared before the Hayward City Council at their regular meeting to request approval of a special permit that would allow her to play outdoor music at The Pavilion until 1:00 a.m. on Friday and Saturday nights throughout the year. Before taking up Otis's request, the council granted a request by Bob Pyykola and the Wild River Inn to hold outdoor music until 12:00 a.m. on Sunday, September 5, 2010. The meeting minutes state that "the council has approved Old Hayward Eatery to hold outdoor music until 1:00 a.m. on July 23-24 on a trial basis. All other requests acted upon by the council have been approved on the basis that the outdoor music was held until 12:00 a.m. only." (Pyykola originally had asked for a permit for 1:00 a.m.)

At the meeting, Otis's attorney stated that if the council denied her permit request, it would be doing so in violation of her First Amendment rights and he would serve a notice of claim on the clerk that night. Swintowski spoke out in opposition to Otis's permit request, and the council subsequently voted to deny it. Gillis, Johnson, Kreyer, Parker, Voight and Worman voted to deny the application; Munich voted to grant the application; and Speros abstained. Otis's attorney then served the clerk with a notice of claim.

## DISCUSSION

### I. Summary Judgment Standard

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In ruling on a motion for summary judgment, the admissible evidence presented by the nonmoving party must be believed and all reasonable inferences must be drawn in the nonmovant's favor. However, a party that bears the burden of proof on a particular issue may not rest on his pleadings, but must

affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires a trial. *Hunter v. Amin*, 538 F.3d 486, 489 (7th Cir. 2009) (internal quotation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The applicable substantive law will dictate which facts are material. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). Further, a factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The court's function in a summary judgment motion is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

**II. Individual Capacity Claims**

In her original summary judgment motion, Otis asserted that the ordinance is unconstitutional on its face under the First Amendment because it is overly broad, vague and ambiguous and not precisely tailored to further a compelling state interest. She also asserted that it is a content-based regulation of protected speech because it applies only to music, does not regulate any other noise or sound, does not limit volume or decibel levels and is not limited to the regulation of amplified music. With respect to her Fourteenth Amendment claim, Otis asserted that the ordinance was discriminatory because it allows anyone holding a permit approved by the city council to play music outside after 10:00 p.m. but denies the very same form of expression to those who do not hold or who have been denied a permit. Otis also argued that defendants singled her out from other permit applicants for differential and less favorable

treatment without a substantial government interest. In lieu of responding to Otis's summary judgment motion, defendants conceded that Otis was deprived of her constitutional rights and admitted liability on the part of the city and the city officials in their official capacities.

In her current motion, Otis contends that defendant Duffy must be held individually liable for his "discretionary actions as [mayor] in administering and interpreting the [ordinance] against her on September 17, 2007." Dkt. 53 at 2. She also asserts that defendants Swintowski, Gillis, Johnson, Kreyer, Parker, Voight and Worman are personally liable for their discretionary acts of speaking out and voting to deny her request for an outdoor music permit on July 19, 2010. Defendants have raised the defenses of legislative and qualified immunity.

**A. Duffy's Comments**

Otis contends that in the course of discussing the newly adopted ordinance at the September 17, 2007 council meeting, Duffy made a misleading statement to her about being able to get a future permit. Specifically, when Otis asked whether she could be issued one permit to play outdoor music on a weekly basis, Duffy replied that she potentially could approach the city council with a regular schedule for outdoor music and if no one turned out to complain, there would not be a problem. Defendants argue that Duffy's statement could not have constituted enforcement or application of the ordinance because the ordinance had not yet become effective and Duffy merely was responding to a hypothetical question from Otis. I agree.

To bring suit, a plaintiff "must have suffered an 'injury in fact'– an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). The injury also must be fairly traceable to the challenged action of the

defendant and "likely," as opposed to merely "speculative," to be "redressed by a favorable decision." *Id.* at 560-61.

Although Otis claims that Duffy's statement "chilled" her constitutional rights, she fails to explain how. At the meeting, Duffy did not tell Otis whether she would be issued a permit to hold outdoor music on a weekly basis. He merely stated that Otis "potentially" could approach the city council with a regular schedule for outdoor music and if no one turned out to complain, there would not be a problem. I understand that Otis feels misled by the statement which implies that she might get a permit, but she suffered no injury that can be redressed by this court. The comment did not reflect a decision to issue a permit to Otis and it in no way restricted her rights to free expression. Because Otis does not have standing to bring an individual capacity claim against Duffy for making misleading comments on September 17, 2007, that claim will be dismissed. As a result, it is unnecessary to address the parties' arguments regarding whether Duffy was entitled to either legislative or qualified immunity.

**B. Denial of Otis's Permit**

On July 19, 2010, Otis and her attorney appeared before the city council at their regular meeting to request approval of a special permit that would allow her to play outdoor music at The Pavilion until 1:00 a.m. on Friday and Saturday nights throughout the year. Following the effective date of the ordinance, the city council had granted several permits to various groups to allow outdoor music to be played after 10:00 p.m. However, after defendant Swintowski spoke out in opposition to Otis's permit request, defendants Gillis, Johnson, Kreyer, Parker, Voight and Worman voted to deny the application.

Although defendants generally discuss legislative or absolute immunity with respect to the council members, they have not argued or provided any reasons why the council members are entitled to it for their role in denying Otis's permit. *See Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988) (those asserting absolute immunity have the burden of establishing that they are entitled to it). Instead, they assert that they are entitled to qualified immunity.

Qualified immunity shields public officials from liability when they act in a manner that they reasonably believe to be lawful. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). The Supreme Court has identified two key inquiries for qualified immunity assertions: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 201(2001). In *Pearson*, 555 U.S. at 236, the Court held that lower courts are free to decide the two questions controlling a qualified immunity analysis in whatever order is best suited to the case at hand; a negative answer to either one is enough to establish the defense of qualified immunity. "Although qualified immunity is an affirmative defense, once the defense is raised, it becomes the plaintiff's burden to defeat it." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (citations omitted and emphasis added).

Because defendants already have conceded that Otis was deprived of her constitutional rights under the First and Fourteenth Amendments, Otis has met her burden with respect to the first qualified immunity inquiry. However, to succeed, Otis also must show that those rights were clearly established under existing law. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified

immunity unless the very action in question has previously been held unlawful, *see Mitchell* [*v. Forsyth*, 472 U.S. 511,] 535, n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (1987); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting same and equating standard to the official having "fair warning"). In other words, the qualified immunity inquiry is whether a defendant made a decision "that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

To determine whether a right is clearly established, the court must compare the specific facts of the case "to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988), *abrogated in part on other grounds, Spiegla v. Hull*, 371 F.3d 928, 941-42 (7th Cir. 2004). Otis can meet her burden by presenting "a clearly analogous case establishing a right to be free from the specific conduct at issue." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). However, "the factual circumstances of the alleged violation need not be 'identical' to prior holdings in order to find an officer entitled to qualified immunity." *Rakovich*, 850 F.2d at 1209.

The city council defendants argue that they are entitled to qualified immunity because (1) Otis's attorney did not advise them on July 19, 2010 that the ordinance itself was unconstitutional but only that failing to issue her a permit would be unconstitutional; (2) they each followed the advice and recommendations of the City Attorney with respect to enacting and enforcing the ordinance; and (3) there is no evidence about the state of mind of the council member defendants at the meeting on July 19, 2010. According to defendants, "it is objectively

reasonable for these defendants to believe that when they voted on July 19, 2010, on plaintiff's application they were lawfully complying with the provisions of the City's ordinance." Dkt. 36 at 9.

As Otis notes, defendants appear to be relying on a mistaken interpretation of the qualified immunity standard. In *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982), the Supreme Court eliminated the subjective or good faith element from the qualified immunity analysis and made clear that qualified immunity "focuses on the objective legal reasonableness of an official's acts." *See also Wollin v. Gondert*, 192 F.3d 616, (7th Cir. 1999) (citing same); *Auriemma v. Rice*, 910 F.2d 1449, 1452 (7th Cir. 1990) (same). Under this objective standard, the dispositive question is whether a reasonable public official could have believed that his or her actions were lawful in light of existing law. *Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001). Therefore, the advice that defendants did or did not receive, their actual knowledge of the law and their state of mind are irrelevant. This may seem harsh to the defendants, who logically might feel that they ought to be able to rely on the advice they received from the village's attorney. But routine advice of counsel, by itself, is not an exception to the rule that a government official has no immunity for acts that are clear violations of established law. *Cf. Davis v. Zirkelbach*, 149 F. 3d 614, 619-20 (7th Cir. 1998). In *Davis*, the court outlined the factors that might elevate a routine advisal by counsel into an extraordinary circumstance, *see id.;* none of the facts in the present case suggest that any of those factors apply here.

The ordinance in this case targets outdoor music. Over two decades ago, the Supreme Court unequivocally held that "[m]usic, as a form of expression and communication, is protected under the First Amendment." *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989); *see also*

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569 (1995) (music "unquestionably shielded" by First Amendment). The Court also has held that

> [o]ur cases make clear, . . . that . . . in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'

*Ward*, 491 U.S. at 791 (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984); *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 648 (1981)). Regulating outdoor music likely to cause sleep disturbance or annoyance may be a compelling government interest.[2] *See McCray v. City of Citrus Heights*, 2000 WL 1174728, *6 (E.D. Cal. Aug. 7, 2000) (citing *Ward*, 491 U.S. at 796). However, the dispositive question is whether the government has overstepped its bounds and unwarrantedly abridged First Amendment freedoms. *Cox v. New Hampshire*, 312 U.S. 569, 574 (1941).

Although "perfect clarity and precise standards have never been required of regulations that restrict expressive activity," *Ward*, 491 U.S. at 794, "[i]t is well established that where a statute or ordinance vests the government with virtually unlimited authority to grant or deny a permit, that law violates the First Amendment's guarantee of free speech," *MacDonald v. City of Chicago*, 243 F.3d 1021, 1026 (7th Cir. 2001) (citing *Saia v. People of State of New York*, 334 U.S. 558, 559-60 (1948); *City of Lakewood v. Plain Dealer Publ. Co.*, 486 U.S. 750 (1988). The rationale is that when unlimited discretion exists, "the possibility is too great that it will be

---

[2] I note that in this case, neither the parties nor the record make clear what government interest or purpose that Ordinance #476 was designed to serve.

exercised in order to suppress disfavored speech." *MacDonald v. Chicago Park Distr.*, 132 F.3d 355, 361 n. 6 (7th Cir. 1997) (citing *Plain Dealer*, 486 U.S. at 757-58); *see also DeBoer v. Village of Oak Park*, 267 F.3d 558, 572-73 (7th Cir. 2001) (quoting same).

Courts consistently and routinely strike down ordinances providing for permit schemes that contain obscure standards or otherwise fail to limit the discretion of the officials charged with enforcing them. *See, e.g.*, *Plain Dealer*, 486 U.S. at 769-72 (ordinance struck that allowed mayor to deny permit for news rack if it was not "in the public interest" and set terms that were "necessary and reasonable" because the ordinance conferred unfettered discretion); *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 149-51 (1969) (ordinance struck for conferring unbridled discretion when it required the city commission to issue a parade permit unless in "its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused"); *Saia*, 334 U.S. at 559-60 (city ordinance prohibiting sound amplification devices except with permission from police chief infringes free speech in absence of any standards for police chief to follow); *DeBoer*, 267 F.3d at 574 (finding unconstitutional policy limiting use of village hall to program that "benefits the public as a whole" and does not "promote or espouse the philosophy, ideas or beliefs of any particular group"); *McCray v. City of Citrus Heights*, 2000 WL 1174728 (E.D. Cal. 2000) (ordinance requiring permit prior to outdoor use of amplified music between 10:00 p.m. and 8:00 a.m. unconstitutionally vague).

In contrast, those regulations that have passed constitutional muster contain specific standards for permit approval and are directly and effectively related to the overall problem the government seeks to correct. *See, e.g.*, *Ward*, 491 U.S. at 800-01 (upholding municipal noise

regulation requiring city sound technician to control mixing board during performances because it directly and effectively served city's substantial interest in avoiding excessive volume and providing sufficient amplification in concert ground); *MacDonald*, 243 F.3d at 1024, 1028 (upholding parade ordinance that required transportation commissioner to grant parade permit unless proposed activity substantially and unnecessarily interfered with traffic or police, fire protection and ambulance services were not available in sufficient numbers); *Graff v. City of Chicago*, 9 F.3d 1309, 1317-19 (7th Cir. 1993) (upholding ordinance to license newsstands because it contained six specific criteria for making determination).

With respect to the Fourteenth Amendment, the Supreme Court has explained that "[o]ur cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citing *See Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989)). "In so doing, we have explained that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Id.* (quoting *Sioux City Bridge Co.,* 260 U.S. at 445). Framed in this way, plaintiff's equal protection claim can be analyzed in a similar manner to her First Amendment claim. As the court of appeals explained over twenty years ago in *Vukadinovich v. Bartels*, 853 F.2d 1387,(7th Cir. 1988):

> Normally, we think of the Equal Protection Clause as forbidding the making of invidious classifications—classifications on the basis

> of such characteristics as race, religion, or gender. Here, plaintiff is not claiming that he was classified on the basis of some forbidden characteristic, only that he was treated differently because he exercised his right to free speech. We believe this is best characterized as a mere rewording of plaintiff's First Amendment-retaliation claim, which was properly disposed of. *Grossbaum v. Indianapolis-Marion County Building Authority*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996) (equal protection clause "does not establish a general right to be free from retaliation"); *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("To the extent Watkins contends that she was dismissed because of her expressive activity, that claim arises under the First Amendment"); *Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir. 1990) (dismissing plaintiff's equal protection claim in retaliation case because it "amounts to no more than a restatement of his first amendment claim").

*Id.* at 1391-1392. In other words, there is no separate equal protection violation just because municipal officials enforced an ordinance that violates the First Amendment against a performing musician; the calculus changes, however, if those officials enforced the ordinance against one performing musician but not against other similarly situated performing musicians, unless some rational basis for the distinction can be shown.

The sweeping ordinance in this case limits outdoor music after 10:00 p.m., without any regulatory detail. It is not narrowly drawn to regulate the place, manner or decibel level of the music, and it fails to prescribe even general standards for the city council to follow when issuing or denying request for permits to perform outdoor music occurring after 10:00p.m. *See* Ordinance #476, dkt. 1, Exh. A. The ordinance provides no rational or discernible basis by which municipal officials can distinguish between different musicians applying for after-hour performance permits. Each permit decision is left to the whim of the village officials, who do not have to explain or account for the vicissitudes of their decisions. Given these facts, it should have been clear to the city council members in this case that applying the ordinance to Otis but not

to other similarly situated groups wishing to play outdoor music after 10:00p.m. was unlawful under both the First and Fourteenth Amendments.

ORDER

IT IS ORDERED that plaintiff Martha Otis Scheer's partial motion for summary judgment (dkt. 29) is GRANTED in part and DENIED in part:

(1) Plaintiff's motion is DENIED with respect to Otis's individual capacity claim against defendant Thomas Duffy. Because Otis lacks standing to bring the claim, it will be DISMISSED with prejudice; and

(2) Plaintiff's motion is GRANTED with respect to the individual capacity claims against defendants Bill Swintowski, Gary Gillis, Harold Johnson, Joe Kreyer, Pat Parker, Al Voight and Verna Worman.

Entered this 26th day of August, 2011.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge